**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:07cv189**


| | | |
|---|---|---|
| **CHARLOTTE-MECKLENBURG BOARD OF EDUCATION,** | ) ) ) | |
| **Petitioner/Plaintiff,** | ) ) | |
| **vs.** | ) ) | |
| **B.H. by PARENT OR GUARDIAN, C.H. and W.H.,** | ) ) ) | |
| **Respondent/Defendant.** | ) ) ) | |
| | ) | **O R D E R** |
| **C.H. and W.H., on their behalf, and as parents and next friends of B.H., a minor,** | ) ) ) ) ) | |
| **Third-Party Plaintiffs,** | ) ) | |
| **vs.** | ) ) | |
| **DR. JANE RHYNE, DR. MICHAEL MARCELA, KATHLEEN ELLING, and RANDALL McCARTHY,** | ) ) ) ) | |
| **Third-Party Defendants.** | ) ) ) | |

1

**THIS MATTER** is before the Court on the Motion of Charlotte-

Mecklenburg Board of Education and Third-Party Defendants to Dismiss

Cross-Appeal, Counterclaim, and Amended Third-Party Complaint [Doc.

15], filed October 25, 2007.


## PROCEDURAL HISTORY

Plaintiff Charlotte-Mecklenburg Board of Education (Board) filed this

action on May 3, 2007 to appeal an adverse administrative decision in a

special education contested case brought pursuant to the Individuals with

Disabilities Education Act (IDEA), 20 U.S.C. §§1400, *et. seq.*[1] [Doc. 1

"Complaint/Appeal" (hereinafter the Complaint)].  The Complaint seeks

review of the ruling of the State Hearing Review Officer (Officer) who found

that the parents of the child involved timely brought a contested case

petition. [Id., at ¶2].  In the underlying contested case petition, the parents

claimed that the Board had failed to identify the child at issue, B.H., as a

---

[1] The "touchstone of IDEA is the actual provision of a free appropriate public education" to children with disabilities.  Sellers by Sellers v. School Bd. Of City of Mannassas, 141 F.3d 524, 527 (4th Cir. 1998), *certiorari denied* 525 U.S. 871, 119 S.Ct. 168, 142 L.Ed.2d 137 (1998).  "To advance this goal, IDEA provides a panoply of procedural rights to parents to ensure their involvement in decisions about their disabled child's education."  Id.  A party aggrieved by the final decision of a state hearing officer may seek judicial review.  20 U.S.C. §1415(e)(2).

child with a disability thus denying him a free and appropriate public education (FAPE). [Id., at ¶3]. As a result, the parents sought reimbursement for private school tuition for two school years as well as reimbursement for special education, therapy and other services. [Id.]. Just prior to the hearing with the Administrative Law Judge (ALJ), the Board reimbursed the parents for the cost of the 2005-2006 school year but asserted the statute of limitations set out in N.C.G.S. §150B-23(f) as a defense to the claim for the 2004-2005 school year. [Id., at ¶¶4,5]. The Administrative Law Judge ruled in favor of the parents. After exhausting all administrative remedies, the Board brought this appeal.

In response to the Complaint, the parents filed an Answer, Cross-Appeal and Counterclaim against the Board. [Doc. 5, filed June 1, 2007]. In the Cross-Appeal, the parents sought review of the Officer's ruling that they had failed to provide sufficient evidence to substantiate the amount of compensatory education needed by their child. [Id., at ¶22]. In addition to the Cross-Appeal, the parents asserted Counterclaims against the Board pursuant to the IDEA, Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. §§794, *et. seq.*, and the Americans with Disabilities Act (ADA), 42 U.S.C. §§12131, *et. seq*. [Id., at ¶¶47, 48]. In

addition to the statutory claims, the parents asserted counterclaims for federal and state due process violations and a cause of action pursuant to 42 U.S.C. §1983. [Id., at 17-19].

On June 11, 2007, the parents brought a third-party action against the individual Defendants Rhyne, Marcela, Elling and McCarthy.[2] [Doc. 7]. Defendant Rhyne was the Assistant Superintendent for Special Education and Defendant Marcela was the Accountability Specialist for the Board. [Id., at ¶¶46, 47]. Defendant Elling was the principal for the elementary school originally attended by the child and Defendant McCarthy was the school psychologist. [Id., at ¶¶48, 49]. As to these individual Defendants, the parents asserted IDEA, Rehabilitation Act and ADA claims. [Id., at 11]. In addition, they alleged federal and state due process violations and a claim pursuant to §1983. [Id., at 13-14].

On July 20, 2007, the parents filed an Amended Answer and Amended Counterclaim as well as an Amended Third-Party Complaint. [Docs. 9, 10]. The amendments re-characterized the due process claims

---

[2]In this initial third-party action, the parents also named other individual defendants, but those additional individuals were dropped from the action when the parents filed an Amended Third-Party Complaint. As a result, only the above-named individuals are listed as Third-Party Defendants.

as violations of §1983. [Id.].  In addition, the Amended Third-Party

Complaint deleted certain individual defendants. [Doc. 10].

On September 18, 2007, this case was reassigned to the

undersigned.  On review of the pleadings, the Court noted that there were

references to motions to dismiss contained within the Responses to the

Amended Counterclaim and Third-Party Amended Complaint. [Docs. 11,

12, filed July 30, 2007].  Since motions to dismiss are required to be

separately filed and briefed, in order to be considered, the Court provided

the parties with an opportunity to do so. [Doc. 14, filed October 14, 2007].

In response to that Order, the Board and the Third-Party Defendants filed

the pending motion to dismiss along with the briefs relating thereto.


## STANDARD OF REVIEW

The motion to dismiss is brought pursuant to Federal Rule of Civil

Procedure 12(b)(6).[3]  The Supreme Court has recently clarified the

standard of review  used to evaluate complaints in connection with Rule

---

[3] Movants state in their Motion that they move pursuant to Rule 12(b)(1) as well as 12(b)(6).  They have made no argument, however, as to how this Court lacks subject matter jurisdiction.  As such the Rule 12(b)(1) Motion will be denied.  It is most curious that the Plaintiff would question subject matter jurisdiction in this Court, as it was the Plaintiff who brought this matter to this Court to begin with.

12(b)(6) motions.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]
>
> ...
>
> [This standard does] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, at 164-65, 174, 167 L.Ed.2d 929 (2007),(citations omitted). As has always been the case, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). However, the court "'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

The Supreme Court thus requires a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim

*plausible*." Iqbal v. Hasty, 490 F.3d 143, 157 (2nd Cir. 2007), *certiorari granted sub nom* Ashcroft v. Iqbal, 128 S.Ct. 2931 (2008) (emphasis in original); *accord*, Giarratano,521 F.3d at 302; Self v. Norfolk Southern Corp., 264 Fed.Appx. 313 (4th Cir. 2008) (citations omitted).


## ALLEGATIONS OF THE AMENDED COUNTERCLAIM AND ALLEGATIONS OF THE AMENDED THIRD-PARTY COMPLAINT[4]

The Motion before the Court asserts that the Counterclaim and the Third Party Complaint do not state a claim upon which relief can be granted. Therefore, for the purposes of this Motion, the allegations set out in the Counterclaims and Third Party Complaint will be taken as true.

The parents allege that in April 2006 they filed a formal complaint with the Department of Public Instruction (DPI) alleging that the Board had failed to identify their child as required by the IDEA and had failed to follow proper procedures to provide him with a FAPE. [Doc. 9, at ¶29]. Specifically, they claim that B.H.'s kindergarten teacher referred him to an Intervention Team in February 2003 but no such team was formed to

---

[4] The allegations made in the Amended Counterclaim were repeated in the Amended Third-Party Complaint. [Doc. 10]. Thus, separate references are not included.

review his case.  [Id., at ¶4].  At the end of the school year, a screening report was provided to the parents but no meeting was convened to discuss the contents of the report.  [Id.].  It is alleged that the next year, B.H.'s first grade teacher was unaware of the screening report until told by his parents.  [Id., at ¶6].  He was not referred to an Intervention Team until April 2004 after the parents made a written request for evaluation.  [Id., at ¶7].  During B.H.'s year in the first grade, it is alleged that when he was unable to complete his work, he was sent back to the kindergarten class, a fact which embarrassed him.  [Id., at ¶8].  In May 2004, McCarthy (the school psychologist) conducted a psychological evaluation and found B.H. to be functioning in the low average range.  [Id., at ¶9].  McCarthy opined, however, that the testing scores were invalid due to B.H.'s attention disorder type behavior during the testing.  [Id.].  It is alleged that the subsequent use of these scores to assess whether B.H. had a learning disability was inappropriate.  [Id.].  It is also alleged that McCarthy recommended additional testing, but such was not performed until the spring of 2006, near the end of the fourth school year at issue for B.H.  [Id., at ¶10].

In June 2004, the school decided that based on B.H.'s test scores he

did not qualify as having a specific learning disability and that he did not need any interventions or services.  [Id., at ¶12].  The parents objected to these conclusions, but were told the only accommodation which could be provided was retention.  [Id., at ¶13]. During that same time period, B.H.'s pediatrician recommended that he be evaluated for other health impairments; however, the school did not do so.  [Id., at ¶14].  As a result, the pediatrician himself referred B.H. for evaluation at a private facility where B.H. was diagnosed with Developmental Coordination Disorder, Learning Disorder and Ideomotor Dyspraxia.[5]  [Id., at ¶16].  It was recommended that he receive maximum resource services and be evaluated by other specialists.  [Id., at ¶17].  Those evaluations were made and in August and October of 2004, it was found that B.H. had a significant auditory processing disorder, speech difficulties, Dysliexia, Saccadic Eye Movement Disorder, Occular Pursuit Disorder and Retinal Dystrophy.  [Id., at ¶18, 19].

The parents withdrew B.H. from the school in August 2004 and sent him to a private school, [Id., at ¶21], but continued to correspond with the public school in an effort to obtain a FAPE for their child. [Id. at ¶22].   In

_____

[5] The loss of the ability to perform coordinated acts or involuntary motion spurred by thought or ideation.  Dorland's Illustrated Medical Dictionary (31st ed. 2007).

March 2005, the school had a meeting with the parents and again found B.H. ineligible for services with the exception of vision impaired services. [Id., at ¶23]. In April 2005, the parents sent documentation to the school showing that B.H. was legally blind and requesting the vision impaired services. [Id.]. The school, however, did not convene another meeting for the formulation of an Individualized Educational Plan (EIP)[6] for the implementation of such services until October 2005 at which time the school again found B.H. ineligible for services. [Id., at ¶24, 25]. Defendant Marcela, the school's accountability specialist, then advised that additional testing was necessary in order to determine whether B.H. was eligible for services. [Id.]. In March 2006, the Board finally found B.H. eligible for services as visually impaired but proposed an IEP which did not provide for other services. [Id., at ¶26].

After making this decision, the Board sent the parents a settlement proposal pursuant to which some of the services sought by the parents would be provided. The proposal, however, contained a waiver of the right to bring legal action, so the parents declined to sign it. [Id., at ¶28]. In

---

[6] An individualized educational plan is a comprehensive written statement, developed jointly by the child's parents and the school district, which outlines the child's special educational needs and the services to be provided to meet those needs. 20 U.S.C. §1414(d).

May 2006, the Board developed an IEP for B.H. which included special education, occupational therapy, speech therapy and vision services.  [Id., at ¶30].  These were, however, declined by the parents.  [Id.].

B.H. has been diagnosed with Juvenile Batten's Disease, a neurological disease which results in the deterioration of motor and cognitive abilities and is always fatal, usually by the patient's late teens.  [Id., at Counterclaim ¶1, 44].  The first signs of the disease are learning and vision difficulties.  [Id., at ¶2].

The parents allege that during the contested case petition process, both the ALJ and the Officer found that the Board had acted unreasonably and in bad faith by delaying in identifying, evaluating and developing an IEP for B.H.  [Id., at ¶38, 39].  It is from that determination that the Board appeals herein. [Id., at ¶41].

On these facts the parents assert claims based on violations of the IDEA, the Rehabilitation Act, the ADA and 42 U.S.C. §1983.  They claim they were precluded from participating in discussions of his needs, the Board engaged in repeated procedural violations, delayed in identifying B.H. as a child in need, intentionally misled them as to the evaluation requirements and retaliated against them by asking them to sign a waiver.

[Id., at ¶57]. The parents also allege that the Board acted in bad faith "by their continued indifference and delays in determining B.H.'s eligibility." [Id., at ¶56]. As relief, the parents seek compensatory and punitive damages. [Id., at ¶57].

## DISCUSSION

**IDEA Claims for Compensatory and Punitive Damages**

The Board and Third-Party Defendants first moved to dismiss the demand for compensatory and punitive damages for the alleged IDEA violations. Their motion must be granted because "[t]he IDEA does not authorize courts to grant monetary damages." Emery v. Roanoke City School Bd., 432 F.3d 294, 298 (4th Cir. 2005). "A plaintiff [therefore] cannot recover compensatory or punitive damages for a violation of the IDEA." Id., at 299; *accord*, Sellers ex rel Sellers v. School Bd. of City of Mannassas, 141 F.3d 524, 526-28 (4th Cir. 1998). However, "courts can equitably reimburse parents for funds expended on their child's education because of the school district's failure to provide a FAPE." Emery, 432 F.3d at 298. Where a parent unilaterally places his or her child in a private school, reimbursement will be appropriate only if the district's proffered

placement violated the IDEA and the parent's placement was appropriate.
Id., *citing* Florence County Sch. Dist. Four v. Carter *ex rel*. Carter, 510 U.S.
7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). Thus, to the extent that the
parents seek compensatory and punitive damages pursuant to IDEA, as
opposed to reimbursement, the claims are dismissed. To the extent,
however, that the parents seek "compansatory damages" in the form of
such reimbursement, the motion to dismiss is denied.

**Claim under §504 of the Rehabilitation Act**

Next, the Board and Third-Party Defendants move to dismiss the
claim raised pursuant to Section 504 of the Rehabilitation Act. That statute
provides:

> No otherwise qualified individual with a disability in the United
> States ... shall, solely by reason of her or his disability, be
> excluded from the participation in, be denied the benefits of, or be
> subjected to discrimination under any program or activity receiving
> Federal financial assistance ... . 29 U.S.C. §794(a).

The Fourth Circuit has held:

> [The] IDEA and the Rehabilitation Act are different statutes.
> Whereas IDEA affirmatively requires participating States to
> assure disabled children a free appropriate public education, []
> section 504 of the Rehabilitation Act instead prohibits
> discrimination against disabled individuals. ... [The Fourth Circuit]
> ha[s] held that to establish a violation of section 504, plaintiffs
> must prove that they have been discriminated against–that they
> were "excluded from the ... benefit *due to discrimination* solely on

13

the basis of the disability."  This discrimination requirement is rooted in two parts of the statute's text:  plaintiffs must prove that they have either been "subjected to discrimination" or excluded from a program or denied benefits "solely by reason of" their disability.   To prove discrimination in the education context, "something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown. "[E]ither bad faith or gross misjudgment should be shown before a §504 violation can be made out, at least in the context of education of handicapped children."

Sellers, 141 F.3d at 528-29 (emphasis in original).

Thus, to state a claim pursuant to this statute, the parents must first show that B.H. was discriminated against or excluded from a benefit solely because of his disability.  Id.  If they make that showing, they must then show that the Board's decisions related to B.H. were so inappropriate as to constitute bad faith or gross misjudgment.  Id.; *accord* Heidemann v. Rother, 84 F.3d 1021, 1032 (8th Cir. 1996) ("'either bad faith or gross misjudgment should be shown before a §504 violation can be made out, at least in the context of education of [] children [with disabilities] ... .'").

The Fourth Circuit has held that discrimination under the Rehabilitation Act requires "something more than an incorrect evaluation, or a substantively faulty individualized education plan [IEP], in order for liability [pursuant to Section 504] to exist."  Sellers, 141 F.3d at 529.  If the parents had only alleged that the Board failed to identify B.H. as a disabled

child, this would be insufficient to present a claim that he was discriminated against solely on the basis of his disability since that disability was not recognized.  LIkewise, if "[t]he [parents'] claim that the defendants failed to notice signs of disability ... [but] allege no facts which would suggest the defendants discriminated, *i.e.*, that they acted with bad faith or gross misjudgment," then no claim under §504 has been stated. <u>Sellers</u>, 141 F.3d at 529.  If the parents had "raise[d] nothing more than a failure to timely assess and diagnose [B.H.'s] disability [this would] not clear the hurdle set by the explicit language of section 504."  <u>Id</u>.; *accord*  <u>Bradley v. Arkansas Dept. of Educ.</u>, 301 F.3d 952, 955 (8th Cir. 2002) ("Even in their complaint, the Bradleys merely allege that the state officials 'knew or should have known,'" an allegation which failed to sufficiently allege bad faith or gross misjudgment.);  <u>Monahan v. State of Neb.</u>, 687 F.2d 1164, 1170 (8th Cir. 1982), *certiorari denied* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983) (discrimination requires more than an incorrect evaluation);  <u>Piedmont Behavioral Health Center, LLC v. Stewart</u>, 413 F.Supp.2d 746 (S.D.W.Va. 2006).

Likewise, allegations of negligence, standing alone, are insufficient to state a Rehabilitation Act claim.  <u>Sellers</u>, 141 F.3d at 529.  "[N]egligent

error in the development of an appropriate IEP [leading to a FAPE] does not amount to the kind of invidious discrimination at which the Rehabilitation Act [] is directed[.]" Shirey ex rel. Kyger v. City of Alexandria School Bd., 229 F.3d 1143 **4 (4th Cir. 2000).  Such conduct does not amount to bad faith or gross misjudgment.

> In the special education context, the standard of proving a §504 claim is extraordinarily high. ...  The "bad faith or gross misjudgment" standard is extremely difficult to meet, especially given the great deference to which local school officials' educational judgments are entitled.  Something far more than a mere denial of free appropriate education is required.

Doe v. Arlington County School Bd., 41 F.Supp.2d 599, 608-09 (E.D.Va. 1999), affirmed 210 F.3d 361 (4th Cir. 2000), certiorari denied 531 U.S. 824, 121 S.Ct. 70, 148 L.Ed.2d 34 (2000).

As the Court made clear in Sellers, however, it is possible to state a claim under §504 if the plaintiffs allege more than simple negligence in the formulation of the IEP or in the school's failure to evaluate the child properly.  If there are allegations amounting to bad faith, gross misjudgment, or reckless or deliberate indifference, then a claim under §504 has been stated.  Sellers, 141 F.3d at 528-29; see e.g. M.P. ex rel. K v. Independent School Dist. No. 721, 326 F.3d 975 (8th Cir. 2003) (allegations that other children in school shoved child's head into drinking

16

fountain, physically assaulted him, spit on him, cut him, called him names and mother called two to three times per week with no results stated claim for deliberate indifference or bad faith); Scaggs v. New York Dept. of Educ., 2007 WL 1456221 (E.D.N.Y. 2007) (allegations of bad faith and gross misjudgment included that rodents lived in the school, violence abounded, school lacked proper heating and air conditioning and supplies, and failed to provide any services to the children; thus, claim withstood motion to dismiss); Ferguson v. City of Phoenix, 157 F.3d 668 (9th Cir. 1998), *certiorari denied* 526 U.S. 1159, 119 S.Ct. 2049, 144 L.Ed.2d 216 (1999) (must show deliberate indifference to the likelihood that the conduct was violating federally protected rights); Janet G. v. Hawaii, Dept. of Educ., 410 F.Supp.2d 958 (D.Hawaii 2005).

Conclusory allegations of such bad faith, gross misjudgment, or reckless or deliberate indifference would also be insufficient. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 127 S.Ct. 1955, at 164-65, 174. Moreover, this Court "need not

accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302. In other words, simply labeling the conduct at issue as having been performed in bad faith is insufficient to alleged that the actions in question rise to that level. Id.; Sellers, 141 F.3d at 528-29 (Section 504 claim must be more than a mere recitation of the IDEA claim).

In the Amended Counterclaim, however, the Plaintiffs herein allege that the child's first grade teacher undertook supposedly remedial measures that served to humiliate the child. [Doc. 9 at Counterclaim ¶ 8]. The school did not evaluate the child until he had completed nearly two years of schooling, [Id. at ¶ 9], and did not conduct an evaluation for the child's eligibility stemming from other health impairments (OHI) or for speech-language or occupational therapy until he had been in school for four years. [Id. at ¶ 10]. The school made no assessment of the child's writing skills, even though it is alleged that the school officers recorded their concerns about this issue in their own documents. [Id. at ¶ 11]. The school used the scores from Defendant McCarthy's verbal comprehension and perceptual reasoning evaluation to conclude that the child was not learning disabled, when the school had previously determined that those

scores were "invalid." [Id. at ¶ 9, 12]. Despite all of these concerns the

school, when assessing the accommodations that would be afforded the

child when entering his third year of school, determined that the only

accommodation that would be afforded would be retention - that they would

allow the child to return. [Id. at ¶ 13]. Even though the child's pediatrician

strongly recommended the child for OHI eligibility and further evaluation,

[Id. at ¶ 14], the school steadfastly continued to decline to do so even

between the second and third years of the child's schooling, causing the

parents to have the child evaluated independently. [Id. at ¶ 15]. These

evaluations rendered diagnoses of Developmental Coordination Disorder,

Learning Disorder, Ideomotor Dyspraxia, significant auditory processing

disorder, Saccadic Eye Movement Disorder, Ocular Pursuit Disorder,

Dyslexia, Retinal Dystrophy, [Id. at ¶ 16-19], and ultimately a diagnosis of

Juvenile Batten's Disease. [Id. at ¶ 44]. Nonetheless, near the end of the

third year of the child's schooling the school again ruled B.H. ineligible for

services, even though it was conceded that the child "might qualify for

vision impaired services," [Id. at ¶ 23], even though the child's medical

providers were recommending that he begin learning Braille immediately

while he still had some limited sight left. [Id. at ¶ 23]. Nonetheless, the

school still found the child ineligible for services.  [Id. at ¶ 25].  Only as the child neared the end of the fourth year of his schooling did the school determine that he was eligible for services for the visually impaired. [Id. at ¶ 26].  The school only proposed to provide the child some of the services requested after the parents had filed their action with the Department of Public Instruction, and then only with the caveat that the parents waive all rights to legal action. [Id. at ¶ 28, 29].  These allegations regarding the four year delay in the school's actions, and limited response are made in the context of the education of a child who is diagnosed as unlikely to live into his twenties, [Id. at ¶ 1], and in the face of unrelenting attempts by the parents to get the school to take seriously the child's extensive disabilities.

All of these allegations, if proved to a trier of fact, would support a finding of bad faith, gross misjudgment, reckless indifference, purposeful indifference, and even a malignant arrogant indifference, on the part of the Plaintiff and the Third Party Defendants.  As such, these detailed allegations serve to support the plausibility of the allegations that would state a claim for a violation of §504.   For that reason the Motion to Dismiss the claim under the Rehabilitation Act will be denied.

**Claim Under the Americans With Disabilities Act**

In addition to attacking the Section 504 claim, the Board and Third-Party Defendants also moved to dismiss the claim pursuant to the ADA. That statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services ... of a public entity, or be subject to discrimination by any such entity."  42 U.S.C. §12132.   "The standards for determining violations of both of these acts [ADA and §504] are the same." Cone ex rel. Cone v. Randolph County Schools, 302 F.Supp.2d 500, 513 (M.D.N.C. 2004), *affirmed* 103 Fed.Appx. 731 (2004), *certiorari denied* 543 U.S. 1124, 125 S.Ct. 1077, 160 L.Ed.2d 1075 (2005), *citing* Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995); *accord*, S.S. v. Eastern Kentucky University, 532 F.3d 445 (6th Cir. 2008).  First, the claimant must show that he was discriminated against solely on the basis of his disability.  Piedmont Behavioral Health Center, LLC , 413 F.Supp.2d at 757.  "In addition, like a Rehabilitation Act claim, an ADA claim brought in the educational context must show 'either bad faith or gross misjudgment.'" Id.  Since the parents' detailed allegations are sufficient to make a plausible assertion of bad faith, gross misjudgment, reckless indifference and deliberate indifference

to B.H.'s disability, this claim must also survive the motion to dismiss.

**Claim Under 42 U.S.C. §1983**

When the parents amended their Counterclaim and Third-Party

Complaint, they recast their Fourteenth Amendment and Due Process

claims as brought pursuant to 42 U.S.C. §1983.  Section1983 does not

create any rights under federal law.  Instead, "it provides remedies for

violations of federal rights only where a 'federal statute creates an

individually enforceable right in the class of beneficiaries to which [the

plaintiff] belongs.'"  Blanchard v. Morton School Dist., 509 F.3d 934 (9th Cir.

2007), *certiorari denied* 128 S.Ct. 1447, 170 L.Ed.2d 276 (2008).  The

Board and Third-Party Defendants moved to dismiss these claims as

precluded by IDEA.  The parents responded that "the basis of the H.

Family's constitutional claims is that [the Board] failed to provide B.H. ...

with equal access to the special education, accommodations and services

they are entitled by engaging in a policy of deliberate indifference to its

"Child Find" obligations." [Doc. 17 at 9].  These obligations arise pursuant

to the statutory scheme of IDEA.  Indeed, the allegations in the

Counterclaim and Third-Party Claim repeatedly refer to the failure to comply with IDEA. "Third-Party Defendants have an affirmative duty pursuant to the IDEA to identify, locate and evaluate all children with suspected disabilities;"[Doc. 10at ¶63]; "failed to identify B.H. ... as a child with a disability pursuant to the IDEA;" [Id. at ¶64]; "refused to identify B.H. as a child with a disability pursuant to IDEA;" [Id. at ¶72]; "retaliated by only offering services ... if B.H.'s parents waived all their procedural rights;" [Id. at ¶75]; "misle[d] them regarding the evaluation process;" [Id. at ¶77]; "failed to make a good faith effort to comply with their statutory obligations pursuant to the IDEA." [Id. at ¶78].

Although cast in terms of constitutional rights that have been deprived or violated, these claims relate solely to rights created by IDEA. The IDEA contains statutory remedies "with respect to any matter relating to the identification, evaluation, or educational placement ... or the provision of a free appropriate public education" for a disabled child. A.W. v. Jersey City Public Schools, 486 F.3d 791, 802-03 (3rd Cir. 2007), *quoting* 20 U.S.C. §1415. IDEA provides for the registration of a complaint followed by investigation, mediation, a due process hearing, and finally, the right to bring suit in federal court. Id. "[T]hese provisions of the IDEA

create an express, private means of redress.  This, then, means that a §1983 action is not available to remedy violations of IDEA-created rights[.]" Id.  "Congress [did not] intend[] the remedies in the IDEA to complement, rather than supplant, §1983."  Id., *citing* Sellers, 141 F.3d at 530-31. "[T]he IDEA provides a comprehensive remedial scheme."  Id.  The Supreme Court has repeatedly referred to the statute as an example of a statutory enforcement scheme that precludes a §1983 remedy.  Id. (citations omitted); *accord*, Blanchard,  509 F.3d 934; Alston v. District of Columbia,  __ F.Supp.2d __, 2008 WL 2461034 (D.D.C. 2008) ("Because the plaintiff has alleged no violations of federal rights for which there is not an existing, comprehensive remedial scheme, the court dismisses her §1983 claims[.]").  Moreover, since this is not a situation in which the Board has refused to comply with a final administrative order, §1983 is not available to address the procedural violations alleged by the parents.  J.S., 402 F.3d at 478-79.

The Fourth Circuit has long held that a claimant "cannot sue under section 1983 for alleged IDEA violations."  Sellers, 141 F.3d at 532. "[C]ompensatory and punitive damages are not available through the alternate route of a section 1983 claim for violations of IDEA."  Id.  Scetion

1983 is for the vindication of constitutional rights, not statutory rights.  Id. at

530.  The Court therefore concludes that the claims asserted pursuant to

§1983 must be dismissed.  See also, Diaz-Fonseca v. Puerto Rico, 451

F.3d 13 (1st Cir. 2006); Padilla v. Sch. Dist. No. 1, 233 F.3d 1268 (10th Cir.

2000).

The parents make an interesting argument that they are, in fact

seeking redress under §1983 to vindicate a constitutional right, namely the

constitutional right to a public education found in the North Carolina

Constitution.  N.C. Const. Art. I §15; Leandro v. State of North Carolina,

346 N.C. 336, 488 S.E.2d 249 (1997).  Section 1983, however, is for the

vindication of federal rights, not state rights. Alston, 2008 WL 2461034.

Otherwise §1983 would mean one thing in North Carolina while meaning

something different in other states. See McNulty v. Bd. of Educ. of Calvert

County, 2004 WL 1554401 (D. Md., 2004).

**Cross Appeal**

The Board and Third-Party Defendants also moved to dismiss the

parents' "Cross-Appeal" as not having been timely filed.  The Complaint in

this action was filed on May 3, 2007 and the parents filed their Answer on

June 1, 2007.  The parents denominated their pleading as an Answer,

Cross-Appeal and Counterclaim.  In the "Cross-Appeal," they raised an issue of error by the Officer distinct from any claims made by the Board and Third-Party Defendants in their Complaint.  The Board and Third-Party Defendants object, claiming such appeal by the parents is not timely.

The IDEA provides that after a party has exhausted all administrative remedies, "any party aggrieved by the findings and decision ..., shall have the right to bring a civil action" in federal court.  20 U.S.C. §1415(i)(2)(A). The statute also contains a time limitation:

> The party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, *if the State has an explicit time limitation for bringing such action ... in such time as the State law allows*.

20 U.S.C. §1415(i)(2)(B) (emphasis provided).

North Carolina General Statutes §115C-109.9(d) provides that any party aggrieved by the decision of a State Review Officer in an education contested case petition "may institute a civil action in ... federal court as provided in 20 U.S.C. §1415."   Such action must be brought within ninety days of the adverse ruling. 20 U.S.C. §1415.  The Officer's decision in question was issued on April 4, 2007 and the parents asserted their "Cross-Appeal" on June 1, 2007, well within the ninety day period.  The fact that they captioned the claim as a cross-appeal instead of a claim or

counterclaim does not interfere with the timeliness of their pleading.  This motion is therefore denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Motion of Charlotte-Mecklenburg Board of Education and Third-Party Defendants to Dismiss Cross-Appeal, Counterclaim, and Amended Third-Party Complaint [Doc. 15] is hereby **GRANTED IN PART AND DENIED IN PART** as follows:

1.    The Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is **DENIED**.

2.    The claims for compensatory and punitive damages under the IDEA are hereby **DISMISSED**, but to the extent the claim seeks reimbursement of expenses under the IDEA the Motion to Dismiss is **DENIED**.

3.    The Motions to Dismiss the claims asserted pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act are hereby **DENIED**;

4.    The Motion to Dismiss the claims asserted pursuant to 42 U.S.C. §1983 is **GRANTED** and said claims are hereby **DISMISSED**;

5.      The motion to dismiss the Cross-Appeal is hereby **DENIED**.

**IT IS FURTHER ORDERED** that on or before fifteen days from entry of this Order, the parties shall file with the Court a proposed scheduling order and Certification of Initial Attorneys Conference; and

**IT IS FURTHER ORDERED** that on or before forty-five days from entry of this Order, the parties shall file the administrative record.

Signed: September 24, 2008

Martin Reidinger
United States District Judge